**Sam Soibel, Appellee, v. The Oconto Company and George J. Farnsworth, Appellants.**

**Gen. No. 40,474.**

Opinion filed April 10, 1939. Rehearing denied April 24, 1939.

Rowe & Bailey, of Chicago, for appellants; Joseph A. Bailey and Henry H. Caldwell, of counsel.

Sidney L. Pollack and Levisohn & Levisohn, all of Chicago, for appellee.

Mr. Justice O'Connor delivered the opinion of the court.

Plaintiff, an employee of the tenant, Custer, brought suit against defendants, the landlords, to recover damages for personal injuries sustained by him as a result of the floor breaking under him causing him to fall into the basement. There was a jury trial and a verdict and judgment in plaintiff's favor for $1,000 and defendants appeal.

The record discloses that defendants owned a two-story and basement brick building located on the north-

east corner of Peoria and Lake streets in Chicago; there were four stores in the building. July, 1935, R. J. Custer entered into an oral lease with defendants for one of the stores which was about 25 feet wide and probably 100 feet deep, paying a monthly rent of $40; he was engaged in the wholesale butter and egg business and continued to occupy the premises without interruption for about 15 months. October 4, 1936, plaintiff was employed by Custer to candle eggs and about 8:30 on the morning of the next day Custer and plaintiff were in the store on the first floor of the premises. A small hand truck was on the floor about 25 feet from the front entrance on which there were 7 crates of eggs. Plaintiff took one of the crates from the truck apparently to take it to the back of the store, when the floor under his feet broke, causing him to fall to the basement, as a result of which he was injured. He brought suit June 24, 1937.

His complaint was in two counts in which he set up the leasing of the premises by defendants to Custer; that it was the duty of defendants not to lease the premises with any latent defect or nuisance upon them, or if there was any latent defect or nuisance at the time of the leasing defendants should have notified Custer of this fact; that they negligently failed to do so but permitted the premises to be in an unsafe condition at the time of the leasing and that the first floor was broken and defective but such condition was not discernible by ordinary care or diligence of Custer, the tenant; that defendants knew or should have known of the defective condition; that plaintiff in the course of his employment by Custer was in the exercise of due care and was proceeding with his work when the floor gave way and he fell into the basement.

The case went to trial May 31, 1938, and at that time plaintiff by leave of court filed additional counts, the basis of which was the violation of a city ordinance

which required the owner or occupant of buildings to fix and display conspicuously on each floor placards "stating the uniformly distributed load per square foot of floor surface, which may with safety be applied" to the particular floor. The ordinance further provided that it was unlawful to load any floor to a greater extent than that indicated on the placards; and it was alleged that defendants failed to have the placards displayed as the ordinance required, and by reason thereof neither plaintiff nor the tenant, his employer, was able to ascertain what load might be safely applied to the floor; and as a result of such violation the floor collapsed and plaintiff was injured.

Defendants in their answer denied the charge of concealment, etc., and negligence in leasing the premises, or that they had violated the ordinance. In the instant case there is no contention that there was any agreement at the time of the letting that the landlord would keep the premises in repair. Defendants contend the court should have instructed the jury to return a verdict in their favor at the close of the evidence as requested.

The liability of defendant landlords to plaintiff, the tenant's employee, was no greater than their liability to the tenant. *Shields v. Dole Co.,* 186 Ill. App. 250; 1 Tiffany on Landlord and Tenant, 556. It is also the law that where premises are leased and the lessee takes possession, in the absence of concealment or fraud by the landlord as to some defect known to him and unknown to the tenant, the tenant assumes the risk of personal injury from defects. And this rule is not changed by the fact that the lessor at the time of the letting covenants to repair. *Borggard v. Gale,* 205 Ill. 511; *Breazeale v. Chicago Title & Trust Co.,* 293 Ill. App. 269.

The *Borggard* case was an action to recover damages for personal injuries brought by the wife of the

tenant. She was injured by reason of stepping into a hole in the floor of the rented store. The court there said: "The duty resting upon the landlord to notify the tenant of a defect in the premises which a careful examination would not disclose, but of which the landlord has notice while the tenant has not, we think may well be placed upon the ground, in many cases, that a failure to make such disclosure would be a fraud upon the tenant; . . . But the instruction given in this case did not require that the plaintiff should prove fraud before a recovery could be had, but only concealment of the defect." The jury found there was no such concealment and the judgment for defendant was affirmed by the Appellate and the Supreme Courts.

In the *Breazeale* case we said: "The general rule is that where the right of possession and enjoyment of leased premises passes to the lessee, in the absence of concealment or fraud by the landlord as to some defect known to him and unknown to the tenant, the tenant assumes all risk of personal injury from defects, and the fact that the lessor covenants to repair does not affect this rule so far as concerns the lessor's liability for personal injuries to the lessee due to defects, although their existence is attributable to the failure of the lessor to repair."

In the instant case plaintiff testified he went to work the day before the accident; that the place looked like an old store; that the floor was wooden and appeared to be rotten. The floors were not even — "one was a little down and one a little higher." A witness for defendants testified that the building was in good condition when it was rented in July, 1935, and at all times thereafter; that the floor rests on heavy joists 4 × 14 inches, about 14 inches apart; that he measured them the day before the trial; that the joists were about 22 feet long and rested in a brick wall on each side of the building; the floor which laid on these joists consisted

of 1-inch soft wooden tongue and groove yellow pine boards; on top of these were laid 1-inch hard maple boards which were also of tongue and groove lumber. A witness called by defendants testified that he worked at the store next door to Custer's place of business; that he knew Custer from the time he took possession; that he occasionally saw Custer drive a good sized auto truck into the store.

Plaintiff's counsel started to take Custer's deposition in the Federal Penitentiary at Leavenworth. Defendants were also represented by counsel. Custer testified he was in the wholesale butter and egg business and that he rented the place from month to month, and he described the character of the building; that he conducted his business in the store until about February, 1937. He was then asked whether defendants had posted any display cards in the store showing the load per square foot that could be safely carried; after consulting the warden he refused to testify further. He was not cross-examined.

Whether the reading of this deposition on the trial over defendants' objection was error is of no importance for the reason that what Custer testified to is shown by other evidence which is undisputed.

Plaintiff further contends that since Custer's tenancy was from month to month his last tenancy "commenced on October 1st and plaintiff was injured on the 5th" and therefore the jury was warranted in finding the floor was defective at the beginning of this tenancy. We do not agree with this contention. While the tenancy was by the month "it does not follow that each month of occupancy created a new demise. Such a tenancy is not a reletting at the beginning of each recurring month. *Hall v. Sherrod,* 97 Ill. App., 298''; *Strong v. Stoodvoisky,* 141 Ill. App. 183.

There is no evidence that defendants concealed any latent defect when they let the premises nor at any

other time, and if we assume that the ordinance requiring the placards to be posted was violated by defendants and that in some situations such violation would render defendants liable for personal injuries to plaintiff—a question which we do not decide—(*Cannas v. Britton*, 232 Mich. 291; *Palmigiani v. D'Argenio*, 234 Mass. 434; *Johnson v. Carter*, 218 Iowa 587) we think there could be no liability here because there is no causal relation between the absence of the placards and plaintiff's injuries. In order to impose liability for an injury claimed to be the result of the violation of an ordinance it must appear that compliance with the ordinance would have prevented the injury. Certainly any placards that might be posted under the ordinance would not show that the floor would not safely carry the weight of one man and a case of eggs. Plaintiff failed to make out a case against defendant landlords and the court should have directed a verdict in defendants' favor at the close of the evidence.

The judgment of the superior court of Cook county is reversed.

*Judgment reversed.*

McSURELY, P. J., and MATCHETT, J., concur.