**Joseph Garshon, Appellee, v. Jacob Aaron and Lottie Aaron, Appellants.**

**Gen. No. 43,533.**

542

Opinion filed February 26, 1947. Opinion modified and rehearing denied March 21, 1947. Released for publication March 21, 1947.

SAMUEL LEVIN, of Chicago, for appellants.

LOUIS G. DAVIDSON, JOSEPH D. RYAN and ALVIN EDELMAN, all of Chicago, for appellee.

MR. PRESIDING JUSTICE LEWE delivered the opinion of the court.

This is an action to recover damages for injuries alleged to have been sustained by plaintiff, a tenant, while using a common stairway. There was a jury trial and verdict and judgment in plaintiff's favor for $3,410. Defendant's motions for a judgment notwithstanding the verdict and for a new trial were overruled. Defendant appeals.

The uncontroverted facts are that on November 18, 1943 plaintiff and his wife lived in a four-room rear apartment on the second floor of the premises owned by defendant, commonly known as 1444 South Central Park avenue, in the City of Chicago. The building is of brick, three stories high, contains six apartments, and faces east on Central Park avenue. There are wooden porches and stairways on the west end of the building. The stairway leading from plaintiff's rear porch to the first floor descends south about six steps along the west wall of the building where it turns west a few steps to a small landing about midway between the first and second floors. At this point the stairway

descends north another six steps to the porch of the first floor. The west, or outer, railing of the lower half of the stairs is supported by evenly spaced upright slats which are nailed at the top to the railing and below to a two by four. Both ends of this section of the railing are nailed to six inch square vertical posts which extend from the ground to the third floor.

About seven o'clock in the morning on the day of the occurrence plaintiff left his apartment through the rear door and proceeded to walk down the rear stairs, carrying a "lunch box" in his right hand. When he reached the platform midway between the first and second floors he "touched" the railing with his left hand. The railing gave way, causing plaintiff to lose his balance and fall to the ground, a distance of about 15 feet. Immediately after the accident the plaintiff was found lying on the ground by the defendant Jacob Aaron and one William Factor, a butcher who had a place of business in the vicinity. The section of the railing which pulled away from the supporting posts was about eight or ten feet long. At the time of the accident the plaintiff, who was about 66 years of age, had occupied the premises for about two years and had used the stairs every day during this period. After the occurrence plaintiff was taken to Mount Sinai hospital and returned to his home later on the same day.

Defendant contends that the court erred in not granting defendant's motion for a judgment notwithstanding the verdict.

The law is well settled that the only question raised by the motion for a judgment *non obstante veredicto* is to ascertain whether there was any evidence which, when taken in its aspects most favorable to the plaintiff, proved or tended to prove plaintiff's cause of action. (*Berg v. New York Cent. R. Co.*, 391 Ill. 52, 59; *Libby, McNeill & Libby v. Cook*, 222 Ill. 206, 210.)

Defendant argues that the burden is on the tenant injured to show that the landlord knew of the defect or by the exercise of reasonable care would have known it, and that the landlord is not liable where the injuries were caused by a latent defect.

Defendant Jacob Aaron testified that he did all the carpenter work on the porches and stairways; that "I (def't) examined all the porches, whatever necessary I fixed it . . . I look around all over, everything should be in place, solid, then I paint it . . . I don't remember about the railing if I did any work on that in the last thirty years to repair it or keep it in shape . . . I fix all the time." On cross-examination defendant stated that an inspection of the porch and railing shortly after the occurrence disclosed that "some nails was in the post and some of them in the railing."

██ Plaintiff testified that before the occurrence the railing in question was "dry and shabby and in some places it was rotten"; and that at the time the railing collapsed "I didn't stumble or fall against this fence as I went down the steps."

In *Smith v. Morrow*, 230 Ill. App. 382, 388, the court said:

"In order to come fully within the scope of the definition of a latent defect, the defect must be hidden from the knowledge as well as from the sight and must be one which could not be discovered by the exercise of ordinary and reasonable care. *Smith v. Morrow*, 220 Ill. App. 627. If, by the exercise of reasonable care, the landlord could have ascertained and discovered the defective condition of the railing, then such defect cannot be classed as a latent defect. *Burke v. Hulett*, 216 Ill. 545; *B. Shoninger Co. v. Mann*, 219 Ill. 242. No defect is latent which can be discovered by the exercise of reasonable care, or which a reasonable inspection will reveal. Hence the landlord would be chargeable with any knowledge which a reasonable

inspection would disclose. *Sack v. Dolese,* 137 Ill. 129. The question as to whether or not the appellant did exercise reasonable care to discover the defect and whether or not it would have been discovered by the exercise of reasonable care were questions of fact for the jury. *Wabash Ry. Co. v. Brown,* 152 Ill. 484; *Milauskis v. Terminal R. R. Ass'n. of St. Louis,* 286 Ill. 547.''

Defendant said that he had painted the porches a year and a half before the accident. It is undisputed that the railing in question had been exposed to the elements for many years. The nature of the inspection, if any, which defendant made is not clear from the record. It may well be that a superficial examination would not have revealed rusted nails or rotted ends where the railing was attached to the posts.

In *Houlihan v. Sulzberger & Sons Co.,* 282 Ill. 76, the deceased fell from a wooden ladder attached to a building. There the court said, at page 80:

''The ladder was constructed to bear the weight of firemen carrying hose. The fact that it gave way under the weight of the deceased indicates that it was not properly constructed or had not been kept in a safe condition. . . . It is said that the ends of the rungs were covered by the strips on the outside of the ladder. This is true of the face of the rung, but the end of the rung where it was mortised to the upright reached clear through the upright and was flush with the side of the ladder. An inspection with a sharp or pointed instrument would have disclosed the condition of these ends. No such inspection was made. . . . To say the least, it was a question of fact whether a reasonably thorough inspection of an appliance of this character would not have disclosed its unsafe condition.''

■ ■ Application of the principles announced in the foregoing authorities leaves no doubt that the question whether the defect in the railing could have been discovered by defendant by the exercise of reasonable

care was for the jury to determine. We think the court properly denied defendant's motion for judgment *non obstante veredicto.*

Defendant's next contention is that the verdict is against the manifest weight of the evidence. The only testimony in the record bearing on the condition of the railing at the time of the occurrence is that of plaintiff and defendant Jacob Aaron. In his reply brief defendant says that assuming that plaintiff and defendant Jacob Aaron were equally credible the plaintiff therefore has placed himself in a position where he comes within the time-honored rule that a party heard in the affirmative of a proposition is required to maintain it by a preponderance of the evidence and this can never be the case when one of two parties both equally credible makes an assertion which is denied by the other, citing *Broughton v. Smart,* 59 Ill. 440, and *Northern Trust Co. v. Parker,* 205 Ill. App. 450. In the present case plaintiff's testimony was coupled with undisputed physical facts which in our opinion make the cases cited by defendant inapplicable.

It is the province of the jury, alone, to determine the weight of the evidence and the credibility of the witnesses. (*People v. Hanisch,* 361 Ill. 465, 468.)

Defendant urges that plaintiff's counsel offered certain evidence which was highly prejudicial, relating to precautions taken by defendant Jacob Aaron after the accident. Two photographs showing rear views of the premises in question were displayed to the jury. The law seems well settled that evidence of precautions taken after an accident is not in general admissible for the purpose of showing prior negligence (*Hodges v. Percival,* 132 Ill. 53; *Howe v. Medaris,* 183 Ill. 288), for the reason that such evidence might be interpreted by a jury as an admission of negligence. In the present case the defendant testified that after the occurrence he placed all the parts

of the railing which had fallen to the ground back in their former position and "didn't do nothing else." The photographs show that defendant had reinforced the railing by the use of metal and extra boards. We think the photographs were admissible under these circumstances for the purpose of refuting defendant's testimony. Even though the photographs were not admitted in evidence as defendant contends, no possible prejudice could result from "parading" them before the jury since Jacob Aaron testified that he did reinforce the railing after the accident. Moreover, when defendant's counsel objected to the admission of the photographs in evidence the trial court did not rule on the objection but indicated that it might sustain the objection. Afterward plaintiff's counsel stated that he "would not insist" on the introduction of photographic exhibits "over counsel's objection." The court stated to defendant's counsel, "If you object they will not be introduced; if you do not they will." Defendant's counsel replied, "Well, I will consider it." So far as the record shows the objection was not ruled upon and is, therefore, waived. (*Murphy v. Illinois State Trust Co.*, 375 Ill. 310, 315.) Under the circumstances we are impelled to hold that the photographic exhibits and the admission of defendant that he did reinforce the railing by the use of metal and extra boards were competent.

Defendant maintains that the verdict was excessive. The record discloses that the plaintiff suffered an aggravation and activation of latent pre-existing arthritis in his spine and left knee joint and a fracture of the right transverse process of the third lumbar vertebra; that before the injury his pay checks averaged from $60 to $65 semi-monthly; after the occurrence he was unable to work for six weeks and from February 12, 1944 to May 1, 1944 he was unemployed for a period of eleven weeks, and since July 13, 1944 and up to January 1945 the time of the trial, a period

of 23 weeks, he was unemployed. The loss of wages sustained during these periods aggregated about $1,700.

In the recent case of *Ford v. Friel,* 330 Ill. App. 136, the plaintiff, a practical nurse, was 66 years of age at the time of the accident. She fell on her back while alighting from a bus, resulting in a compression fracture of the first lumbar vertebra. There the defendant argued, as in the case at bar, that most of the pain and suffering complained of by plaintiff was not shown by definite proof to have resulted from the accident in question. The court said, at page 140;

"This court has been called upon many times to determine whether a verdict under a given state of facts was excessive. The decline in the purchasing power of money has frequently been considered in determining the question. *Howard v. Baltimore & O. Chicago Terminal R. Co.,* 327 Ill. App. 83; *Kavale v. Morton Salt Co.,* 242 Ill. App. 205, affirmed 329 Ill. 445. The question of damages is peculiarly one of fact for the jury, and where the jury has been correctly instructed upon the measure of damage, and it is not claimed nor shown that the size of the verdict clearly indicates it was the result of prejudice or passion on the part of the jury, the award should not be disturbed upon review. *Lanyon v. Lanquist & Illsley Co.,* 157 Ill. App. 316 (certiorari denied by the Supreme Court); *Princell v. Pickwick Greyhound Lines, Inc.,* 262 Ill. App. 298."

From an examination of the record we think the evidence amply warrants the damages awarded plaintiff by the jury.

Finally defendant complains that certain language contained in instruction number six is objectionable because the record fails to disclose proof of payment by plaintiff for services of any physician for treatment in curing his injuries nor is their proof of any reasonable value of such service. The evidence

shows plaintiff paid Dr. Coe $40. The instruction speaks of "all money necessarily expended . . . for doctor's bills." An instruction in substantially the same language was approved in *Wicks v. Cuneo-Henneberry Co.*, 319 Ill. 344, 348. There the court said that the payment of a bill of a physician is *prima facie* evidence that it is reasonable. Furthermore, in our opinion the phrase "all money necessarily expended" includes the fee paid Dr. Coe.

We have considered the other points urged and the authorities cited in support thereof, but in the view we take of this case we deem it unnecessary to discuss them.

For the reasons stated, the judgment is affirmed.

*Judgment affirmed.*

KILEY and BURKE, JJ., concur.